G&K Enterprises Plaintiff Appellant and Chicago Defendant Appellant. On behalf of the Plaintiff Appellant, Mr. Robert T. O'Donnell, Jr. On behalf of the Plaintiff Appellant, Ms. Mary Lee Dixon. Mr. O'Donnell, you may proceed. It's been a while since we've seen you. Yes, it is, Your Honor. My name is Barry Fields. Good morning again. It's Robert O'Donnell for the Appellant. It's our position, quite simply, is that the trial court erred in granting the city's motion for summary judgment, and in so doing, completely ignored the party's annexation agreement and the controlling provisions within the annexation agreement. Which allowed the existing, and was intended to allow, and specifically does allow, the defined recycling use to continue. Isn't this case, Mr. O'Donnell, pretty much about is and, or, is or, and, can and be or, basically? That is an issue, Your Honor. But in order to get to that issue, I think we first have to overcome, as I just said, the trial court's error in ignoring the annexation agreement. So if we accept that the annexation agreement, in fact, does control the land use going forward, then we would ask the question of, or address the issue of and versus or. Is that really a difficult question? Isn't it clear that under the law, the annexation agreement controls, doesn't it? Yes. And I don't think that could be more clear. And therefore, I don't think the trial court's error could be more clear in completely ignoring the annexation agreement in favor of a later adopted text amendment by the city. How long, how much time is left on the annexation agreement? It's a 20-year document. 20 years. But there's only, what, like three years left or something? Oh, no. Was it? Well, they, you know, excuse me, Your Honor, but I do have, 2006. Oh. Right. So the annexation agreement is in effect for 20 years. So is it your argument, in essence, the city went wrong when they went all in on the word and, and the city took the position that all of the activities must be occurring and continuing to occur for the use to qualify as recycling use? Is that what they're saying? It isn't, Your Honor. I think the city is saying they ignore, as did the trial court, they ignore the annexation agreement and the definition of recycling use. They opted to argue in favor of what their defined construction and demolition debris recycling use meant. And I would readily concede that the way the village defined construction and demolition debris recycling, the storage, maintenance, and washing of trucks would be a secondary or subordinate use. Well, it has to be, according to the PUD ordinance, it has to be related to the business. Exactly. And the primary business identified in the ordinance was construction and demolition debris recycling. All of that completely ignores the separately defined recycling use because the separately defined recycling use allows for three distinct uses. So the trial court was correct if, if we were looking at the ordinance or the two, basically the two ordinances, the text amendment and the PUD ordinance. I wouldn't be here, Your Honor. If we didn't have an annexation agreement, I wouldn't be here. Now, the annexation agreement, I mean, the part that says that it controls over any inconsistent ordinances and all that. Yes. That's found in Article 6, correct? It is. Now, it talks about the present recycling use or the future use of the subject realty for the construction and demolition debris recycling use as defined in the text amendments or in the PUD ordinance. So if we're talking about the present recycling use and that's how it's being used at the time of the annexation agreement by that one company, as opposed to the future use, how it may be used in the future perhaps by another company, that relates specifically to the definition of construction and demolition debris, does it not? After the annexation agreement expires. That's the point, Your Honor. The time the annexation agreement was written, you didn't have a city ordinance of PUD, right? Annexation has to come first and then follows zoning, whether it's 10 seconds or 10 months or 10 years. You can't have a zoning ordinance applicable to a property, let alone a PUD ordinance, without first having annexation. So, Justice Burke, to your question, is that yes, it talks about the future use of construction and demolition debris. That future use would be after, presumably after, the annexation agreement expires. Clearly, when the annexation agreement expires, one looks to the underlying zoning and the use is allowed in the underlying zoning. But during the period of the annexation agreement, one cannot simply ignore the provisions of the annexation agreement. How does that make sense then? If you're talking about an annexation agreement that's in effect, and it has these certain things, and then you're talking about the future when it's over, what difference would it make? Once it's done, it's done. I mean, you're talking about the law or how the property may be used after the annexation agreement expires. Then the terms of the annexation agreement are meaningless at that point. It's expired. But we're talking about a situation here. No, but this is, we're talking, in Article VI, we're talking about how we're going to view inconsistent ordinances during the term of years of the annexation agreement. Correct? We are, and the provision makes, and I believe Article VI, which is the provision that Your Honor pointed me to, and I believe correctly so, it says specifically that neither the defined recycling use nor the defined construction and demolition debris recycling can be aggregated, compromised, voided, or denied by any municipal action, code, regulation, or law. So my point is, during the period of the annexation agreement, there were two defined uses in play. One, the existing use, which was the defined recycling use, and the other clearly references the text amendment to the city code, which defined construction and demolition debris recycling. And the agreement treats the two separately and consistently says that, in Article VI most clearly, is that nothing that the city can do during the period of the annexation agreement can deny the property to be used for those two uses. So it's a pre-exemption clause, if you will. Yes. Yes. And so I could theoretically open up a auto junkyard on that property. Yes. I mean, it's a lot of uses you could use other than recycling use. Well, if that auto junkyard, and I was a little flippant when I said yes, but if that auto junkyard, you know, kind of fit the definition. Well, I'm storing vehicles. I'm storing vehicles there. That's all I'm doing, because that's a part of the recycling use that's allowed. If it was part of the recycling use. But I think we're getting ahead. I think we're getting ahead of ourselves with all due respect. First of all, we have to determine what we're going to go, whether or not we are going to say that this annexation agreement certainly trumps the local ordinance. So say we do say that. That's when I say we get to is it and, is and or. So as Justice Burke said, then what uses can we use it for? So how is it now that, say we're going under the annexation agreement, Mr. O'Donnell, how does what they're trying to do, what your clients are trying to do here, how does that fit in the annexation agreement? Because a recycling use under the annexation agreement is defined as three separate and distinct uses. So the and and or. No, the and can be and, Your Honor. Or can be and. It can be and. But it also can be or. Exactly. In the context of a permissive statute or a permissive provision, which this is, you can use and or or. I don't think the outcome is determined by whether or not it's and versus or. Because the city's argument seems to be you've got to be doing all three at the same time in order to qualify for a recycling use. Let me put it this way. Sure. You are saying that the plaintiff and his successors are entitled to use the property for any activity that was listed within the recycling use agreement during the term of the annexation agreement, irrespective of what the city does with its ordinances. Is that what you're saying? Yes. It can be for any of those activities that were listed in the pre-annexation agreement. Yes, because the land uses on the property are determined by the annexation agreement, not by the later adopted zoning ordinances or zoning regulations of the city. So to that point, let's say hypothetically that the city did not make any sort of an amendment to its zoning code and they did not adopt a PUD ordinance or any other land use ordinance applicable to this property. The land use on the property, as defined for recycling use, would be permitted for a 20 year period. Now, at the end of that 20 year period, we're stuck with a property that zoned a state residential or whatever it was. That's a different question at a different time with likely a different outcome. But during the period of the annexation agreement, I believe the law to be unequivocal that the annexation agreement governs the permissible land uses. It actually supersedes any otherwise applicable or contradictory zoning code or regulation. You said later adopted ordinances. Were they not contemporaneous with the annexation agreement? And that was why I answered Justice Shostak's question earlier. You have to have the annexation before you can have the zoning. And it might be at the same meeting and they might be 10 seconds apart. But one has to follow the other. You can't impose zoning on a property. A municipality cannot impose zoning on a property unless that property is within the municipal borders. So annexation is the first step. And it may be immediately followed by the second and the third steps. But annexation is first. But if we're talking about the intent of what was going on here, they're all fairly contemporary. No question. No question. But what you're saying, Mr. O'Donnell, in answer to Justice Hudson's question is that when that six years is up, all bets are off. Yeah. There are any number of positions a landowner can take. You can say I'm a legal nonconforming use. That position is from time to time taken. You can go back to the municipality and renegotiate an extension of the annexation agreement. You can go back to the municipality and make application for some other land use. But at the end of 20 years, the annexation agreement expires and whatever happens happens. Right. And while I hate to give up time when I can still talk, I really don't have anything more to add other than we can't simply ignore the annexation agreement. And I believe the annexation agreement is clear that the defined recycling use is a permitted use during the period of the annexation agreement. I'm sure you'll have something to add after we're done. Just quickly, really, in this case, the annexation agreement and the statute aren't inconsistent. No, they're different. Thank you. Ms. Dixon, you may proceed. Thank you, Justice Burke. May it please the Court, my name is Mary Dixon. I represent the city of West Chicago this afternoon and the city here requests that the Court affirm the ruling of the trial court, which granted judgment in favor of the city holding that the permitted use of the subject property is actually construction and demolition debris recycling. We have these two definitions that keep floating around. Right. What's the interplay? Here's the interplay. I feel a little, as I was listening to opposing counsel's argument, like I'm in an alternate zoning reality. Here's zoning as I know it. When a property annexes to a municipality, by operation of Illinois law, if the municipality adopts language to that effect, when property annexes, it annexes as the highest, most restrictive residential zoning, unless there's an annexation agreement. That's set forth by the Illinois Municipal Code. The city of West Chicago has adopted a zoning ordinance saying that. So in this case, when the property owner was attempting to and wanting to annex this property to the city of West Chicago, he did what a lot of property owners do. You meet with the municipality to say, here's my existing use. This is what I want to have continue. What can we do to ensure that the city adopts appropriate zoning for the property so that it can? Or alternatively, sometimes the property owner wants to change the use to make it something other than what is existing, but the purpose of the annexation agreement is to get the parties together, the city and the property owner, and make agreements. One of the agreements that the Illinois legislature now allows, at least since 1963, is that the city and the property owner can actually agree within a zoning ordinance as to zoning on annexation. So here's the interplay between the two. When the property owner came to the city of West Chicago, the city of West Chicago and the property owner viewed the use of the property as it sat in unincorporated DuPage County. Within the annexation agreement, the city and the property owner agreed as to what the use of that property was at that time, and they defined that use as recycling use. So recycling use is one of the definitions that occurs within the annexation agreement. That's what existed when the property owner came to the city. That's what the property owner wanted to continue to do upon annexation. Didn't want to go residential zoning. Wanted to continue that recycling use. So what the city of West Chicago did in agreement with the owner, the city of West Chicago said, Well, you would come in as ER1, but we'll hide as state residential 1, which is their highest, most restrictive residential zoning. But instead what we're going to do is we'll adopt a text amendment to our existing zoning code that will recognize the definition of construction and demolition debris, and then we'll adopt a second text amendment which will put construction and demolition debris recycling as a use within the office research industrial district, which is how your property is going to be zoned. And we'll adopt a plan unit development for your property, which will allow it to be used as construction and demolition debris recycling, which is synonymous to the defined recycling use. And you can see that because if you go back to the Planning Commission record, which I cite, the intent of everybody when they were annexing the property is to protect the existing use of the property, to guarantee that that use would continue as a legal permitted use upon annexation to the city, and to provide future benefit. So the definition of recycling might not meet the definition of construction and demolition debris recycling on a word-for-word basis, but you can see when you put those two definitions together, they were meant to be synonymous. The construction and demolition debris was the guarantee to the property owner that that property would come into the city and he wouldn't have to make any changes to its existing operations. And things and. In my definition, what he had when he was an unincorporated DuPage counter, what GMK had, was going to be protected. And it was all of those uses. It wasn't any of the individual component parts. So where plaintiff argues, no, what we were supposed to get pursuant to the annexation ordinance was continued recycling use, which is greater and bigger and better than construction and demolition debris. We were supposed to keep recycling use and we would get construction and demolition debris recycling use, or we would get something after the annexation agreement. I'm not really sure how that argument goes, but it's clear that an annexation agreement under Illinois law is a contractual agreement between the parties. Annexation agreement doesn't zone land. It's a contractual agreement to zone land. And you would agree that the language of the annexation agreement controls that, would you not? Yes. But the annexation agreement is clearer, Justice Hudson. It says you have a recycling use. We want to protect that recycling use. We're going to adopt this language to call that recycling use that you presently have, or in the future it's going to be called construction and demolition debris recycling. And if you look at the definition of construction and demolition debris recycling, this is where you get kind of into the weeds with the and, or. But if you look at the definition of either recycling use or construction and demolition debris, it meant to be all-encompassing. And particularly when you look at the definition of construction and demolition debris recycling, it meant that you were going to be able to sort, and it's for sorting, stacking, separating, processing, handling, recycling, loading, and unloading, and transferring of construction and demolition debris, which you shall include. So it gave you an inclusion of these. But here's my question. Couldn't this have been avoided? I don't know who drafted the agreement. Why couldn't it have said that all of these activities must continue to occur on this property in order for the property's use to qualify as recycling law? That could have been put in there, correct? There would have been no dispute over what the intent was. Well, I don't think that the parties actually had any dispute over the intent, considering the fact that the agreement itself was entered into in 2005. It was negotiated by council and staff representatives of the city. The property owner also was represented. There had to have been an agreement. Why would you do that if there was no dispute over the language? Well, where we come to now from 2005 to the filing of the suit in 2017 is now the property owner has said, and the city agrees, that the construction and demolition debris recycling use has been discontinued. The property owner would like to sell the property. And so the property owner now, when the property owner came to us, it was on the request to sell it for one of the component uses, but not the use. They just wanted to wash the trucks. They didn't want to do that. For which the property was sold. If it had said that all of these activities must continue to occur on the property, you probably wouldn't be arguing this today. The issue is really related to the recycling business. And it says that in the PUD ordinance. It's pretty clear. If you're going to wash trucks and store trucks and things like that, it has to be an incidental use basically to the recycling business. Exactly. Where we come to the issue is that the annexation agreement doesn't necessarily, isn't that specific. Well, I guess I beg to differ because I think that even when you look at Article 6, which Your Honor was referencing, the protections that were granted, I think show a meeting of the minds and an intent between parties. The meeting of the minds and the intent was you have presently a recycling use. That recycling use doesn't continue upon annexation unless it would come in as a legal non-conforming use or a non-conforming use, not permitted. But property owners don't typically want to come in as non-conforming uses because Illinois law has a lot of strictures on a non-conforming use. You want to come in as a permitted use. If the property owner here wanted to come in as a permitted use, recycling use, which the property owner thought was different from and more expansive than construction and demolition recycling, the property owner should have suggested at that time to the city that the city adopt an ordinance granting it a legal permit to operate as the recycling use. If the property owner thought recycling use at the time, back in 2005, was different and more expansive than construction and demolition debris recycling, but apparently... Is a recycling use a conforming use? Construction and demolition debris recycling use is a legal conforming use in the city of West Chicago. That was the guarantee that the city made in agreement with the property owner. So those aren't synonymous, you're saying? I am saying recycling use and construction and demolition debris recycling are the same. They're synonymous. They were meant to be the same. It was meant to... This annexation agreement, pursuant to what the Illinois law provides, the annexation agreement is protection to the property owner that the use that you have and that you want is going to be the use that you have and you get on annexation. And that's the use that the city has allowed and would continue and does continue to allow on this property. Throughout the term of the annexation agreement, there has never been an attempt by the city to limit or to change that use. What is the intent to be used now by the new? Well, the reason the property owner initially came to us is because he wanted to have... It was for the washing of vehicles, which Judge Wheaton found when we argued before her is an incidental use or a component use to construction and demolition debris recycling. So it would not be allowed. There is no permitted use. There's no permitted zoning of the property solely for that one purpose. It can be as part of the construction and demolition debris recycling, but it could not just be there to stand alone. Neither could, as Justice Burke suggested, operation of a junkyard or storage of vehicles. Nothing like that could happen. It all has to be construction and demolition debris recycling. And looking at the definition of it, the definition does provide that that is the use. It's not washing vehicles. You're saying that the washing of the trucks and the vehicles obviously does not qualify as recycling use. There's no recycling going on when you wash trucks, right? And that use was subordinate. The use that any of the other uses are subordinate or incidental to or a component part to, I can put a lot of different titles to it, but when you look at construction, the defined construction and demolition debris recycling, it's all in. It's all of that. But if you say they're synonymous, then see, this kind of is confusing to me. If you say that the two terms, recycling use and construction and demolition debris recycling, are intended to be synonymous, then if that's true, then all of the activities of recycling use are permitted, right? Are permitted. Well, what, yes, but what I guess what I mean to say is that in the drafting of the annexation agreement, the parties agreed to what was occurring on the property prior to annexation. All of those things, they put under the caption recycling use. When it became annexed to the city, all of those things were guaranteed to continue under the phrase construction and demolition debris recycling, which is why I think they're synonymous. There was never an intent on the part of either party to modify negatively any of the activities occurring or allowed on the property. Those are still legally, as a matter of fact, the city wanted to ensure they would be legally permitted. So they adopted, agreed upon, you know, this is the thing. It was not the city acting alone. There was an agreement. There was a meeting of the minds in 2005 because of the signature that you see of the property owner. The city said, this is what we're going to do. We recognize what you're doing, and we want that to continue, so we're going to adopt text amendments, and then we're going to adopt a map amendment, and then we're going to give you a special use permit. And there were public hearings required for both the zoning that was allowed and for the annexation agreement.  there had to have been a meeting of the minds. The parties contracted. They signed it. And the city, after signing the annexation agreement, did what the city was contractually bound to do. It's only now that, now, you know, while we're sitting here in the waning years of the annexation agreement, that the property owner apparently can't find a buyer for construction demolition debris recycling, but maybe for one of the component parts. But that wasn't the intent of the parties in 2005, and this contract does control for 20 years. The trial court found that the outside storage and maintenance of trucks and equipment was incidental to the overall recycling use. You never attempted to defend that ruling here on appeal. I don't even think you really even raised that. Well, I agreed with the, I believe I agreed with the definition or the decision made by the trial court. The trial court got it right. So incidental versus primary use. Well, the point that I was making to the trial court and the point I'm making here is the legal permitted use of the property is construction demolition debris recycling. It's not as plaintiff argues, which is we could do recycling use. We could do any of the component parts of recycling use, and we could do construction demolition debris recycling. That's not the party's agreement in 2005. The party's agreement in 2005 was in the county, you're doing what we're going to define as recycling use, and I was, and I didn't negotiate the contract. I don't know why they didn't keep the same language, but I think that they were trying to make it better, but the party said this is the use, and this is the new title we're going to give it. I'm sorry. I mean, really the incidental thing is tied, language is tied to the trial court's adoption of the definition from the ordinances, which you say controlled going forward from the annexation agreement. Exactly. The zoning, the annexation agreement doesn't grant zoning. The annexation agreement is a contract between the municipality and the property owner of what the zoning will be. Right, but it is binding over any zoning, correct? Correct, and if the city hadn't followed through with its pledge to the property owner to adopt the text amendments, to adopt the MAP amendment, to adopt the special use property owner, then would that have been helpful? But the issue is any potential conflict between these two definitions. I mean, you have a definition in the annexation agreement, you have a definition in the ordinances, and the argument is that the annexation agreement definition controls, and it's more expansive than in the ordinances. Well, if that were the case, I personally don't believe that to be the case. You believe they're consistent. I believe they're completely consistent, and if there is a provision in the Bill of My Law that says that if there is a question relative to the interpretation of the annexation agreement, you've got a year to bring such a case. There was never any dispute. And your argument with this and, with the different things, I mean, it really does go to incidental use. Incidental use might be a bad word, but it's in furtherance of the business. For instance, the definition says, you know, the property is going to be used in the annexation agreement for the storage, processing, et cetera, of construction debris and storage of containers and washing, maintaining, storing trucks. Now, you're not arguing that had this business been ongoing to this day and they decided we're not going to store containers anymore, they're now a nonconforming use under the annexation agreement. No. Because they're not storing containers. Because it's an and, because it doesn't mean and or, but your argument is it's got to be related to. Right. Their underlying zoning is for construction and demolition debris recycling. So long as they are operating within that definition. Within it, it says that use shall include outside storage, because they wanted the outside storage. That's why we allowed it, which is including but not limiting to all of these things. But how does that, how is what they want to use it for a detriment to the city? Well, I guess you don't actually go into whether it's a detriment or not. If they had come to the city and sought rezoning just for a specific use, that's something certainly that the city would talk to a property owner about if they wanted to change the zoning. But the city would consider that a change in zoning. If they came, if the property owner came in and they said that now all they wanted to do is provide outside maintenance of trucks and equipment, period, that's the total use of the property that would require a rezoning of the property from the special use that was granted in the ORI district. So regardless of, say, for instance, you have a piece of property zoned for keeping, you know, dogs, animals, and then somebody comes in and says, oh, we just want to use it for, I don't know, something incidental to that. So they take all the dogs off the property. Does the city say, well, that's not the use anymore, so therefore you can't use it? I guess my question is, does the city take into consideration what is the harm, what is the problem with this zoning, with this incidental use? Is it harmful? Is it a problem for the people living in the area? Does that come into consideration? Well, that's a, you know, when the city is doing, you're always concerned about zoning and how it impacts on a neighbor. So harm, you know, that is one of the elements. You always want to protect the sanctity of the community and the residents. But in this case, and in most cases, if a property owner comes in and says, you know, this was my zoning, but I would like to change it, then the city will listen to it. And if that's one of the elements they take into play, they will. But then you have public hearings. You have to. Adjoining landowners can join in. No, a property owner, in your example, it's difficult. There is Ohio law that talks about if you have abandoned a special use or stopped a special use, you lose that right. So, you know, you're starting to get into other areas of zoning law that I don't know necessarily pertain to this. But what the city is asking for here and what Judge Wheaton ruled was that the city is correctly interpreting the legally permitted zoning of the property and that the legally permitted zoning of the property is not a zoning that allows any of the independent component parts to stand alone or to have the property owner be able to sell the property so that a new owner could come in and use the property for one of the individual component parts that make up the zoning. So what we were doing was asking the court, give life to the annexation agreement and to the contractual understanding of the parties in 2005 and how the parties intentionally worked together to protect the pre-annexation use of the property so that at post-annexation that property owner's rights were protected. The city of West Chicago asks that you affirm Judge Wheaton in her ruling because for the reasons we set forth in our brief and for the reasons she stated on the record. I believe she properly interpreted Illinois law and we ask that you affirm her holding on that basis. Thank you. Thank you. Okay. Thank you, Ms. Dixon. Mr. O'Donnell, you may proceed. I want to first follow up on a point that, Justice Burke, you raised with counsel and that is you asked the question whether or not if the storage of containers was discontinued could the other uses still be ongoing? And counsel said yes because the trucks would be related to the primary use, I'm paraphrasing, it being the recycling use. The annexation agreement doesn't distinguish between the uses. They're all treated equally. There is no primary use, secondary use, incidental use. Each use is identified separate and apart from one another. That distinction, primary versus secondary or primary versus incidental, that is in the zoning code definition of construction and demolition debris recycling. And it's for that reason I disagree with counsel when it suggested that the defined uses are synonymous with each other. They are not synonymous. But, again, we get to the, I don't mean to beat a dead horse, but Article VI that talks about present use, which I take to mean present at the time the annexation agreement is signed, present recycling use, and future construction debris use. I mean, is there, you know, does that come into play? I understand your argument that the annexation agreement doesn't have these incidental uses. They just have uses. No hierarchy of uses. No hierarchy. But the ordinances do. Clearly. I mean, clearly the ordinance treats the storage of containers and the washing and maintenance of trucks to be incidental, secondary, or something less than the primary use being construction demolition debris recycling. There's no doubt about that. And that's why throughout the annexation agreement it refers to the two terms separately. So, for example, there's a provision that says no time of day restriction will apply to either the recycling use or construction demolition debris recycling. Repeatedly throughout the agreement, those two terms are not treated synonymously. They're treated and identified and designated separately. So this really addresses something that you, Justice Shostak, raised, is you typically don't see a municipality arguing in favor of the most intense use of the property permitted. The city's position is here you have to do recycling and you have to store containers and you have to wash and maintain trucks or you can't do either of them. Whereas that's not what the language supports, the language of the annexation agreement, yet the use that is proposed or was proposed and denied is a separately identified permitted use under the annexation agreement that is the storage, washing, and maintenance of trucks. Let me ask you a point of question to follow up on that. If all the property is going to be used for is the washing and storing of trucks, how does that in any way relate to a recycling use? It doesn't have to, would be my answer. Even though going in clearly there was contemplated this was going to be used for recycling. I don't know about contemplated, but that clearly was the use at the time the annexation agreement was adopted, yes. But there was no restriction, there was no language to suggest you better keep doing all three or you can't do any one or two of the three, which is what the city's argument is. In fact, it isn't even the city's argument and wasn't the city's argument below. They said forget about the annexation agreement. We need to focus and focus only on the language of the text amendment, the defined construction and demolition debris recycling. As I answered the first question, if that's what we were here talking about, we wouldn't be here. Because clearly under the ordinance defined recycling is that the washing and maintenance of trucks and for that matter the storage of containers is a subordinate, secondary, incidental, whatever word we want to use, but you wouldn't be able to do it without recycling. But that's not what's permitted under the annexation agreement and that's why I strongly believe the trial court erred in focusing only on and incorrectly on one piece. Mr. O'Donnell, in your brief, you only asked that we vacate the grant of summary judgment and remand it for proceedings on the merits. Is that what you're looking for us to do? I would assume that if the court did that, the court would also clearly identify what the permitted uses on the property to be and those uses are supported by what the annexation agreement identifies. Isn't that a legal issue that we're deciding here? Yes, it is a legal issue that you're deciding. So if the court decides the legal issue and the trial court obviously is bound by that decision, the outcome of the case will be decided. That the use that we're suggesting was permitted under the annexation agreement is indeed permitted during the term of the annexation agreement. Thank you. The court would like to thank counsel for their arguments today, the quality of their arguments today, and we'll take a short recess.